## HARRY G. JOHANSEN vs. NCR COMTEN, INC.

No. 89-P-1395.

Middlesex. January 10, 1991. - March 22, 1991.

Present: KASS, KAPLAN, & GILLERMAN, JJ.

*Anti-Discrimination Law*, Prima facie case, Burden of proof, Employee. *Employment*, Discrimination.

Discussion of the Federal cases setting forth methods of allocating evidentiary burdens in cases involving allegations of unlawful job discrimination. [296-301]

In a civil action in which the plaintiff alleged that his employment was unlawfully terminated on account of his age, the judge correctly instructed the jury that if the employer advanced a legitimate business purpose for the discharge, the burden then fell back to the plaintiff to prove the employer's explanation was a pretext, where the evidence of discrimination was circumstantial. [301-302]

CIVIL ACTION commenced in the Superior Court Department on May 10, 1982.

The case was tried before *J. Harold Flannery*, J.

*John W. Marshall* for the plaintiff.

*S. Elaine McChesney* (*Robert A. Buhlman* with her) for the defendant.

KASS, J. Aggrieved by an adverse judgment (founded on a jury verdict) concerning his age discrimination claim, the plaintiff, Harry G. Johansen, argues that the trial judge, in his charge to the jury, failed to allocate correctly the respective evidentiary burdens of the parties. We affirm.

Johansen brought an action against NCR Comten, Inc. (NCR), alleging that it terminated his employment for reasons proscribed by the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 (a)(1)(1976)[1] and its Mas-

---

[1]Section 623(a)(1) provides: "It shall be unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discrimi-

sachusetts analogue, G. L. c. 151B, §§ 4 and 9.[2] Only the Federal claim was tried to the jury; the judge, by arrangement with the parties, was to take the jury's finding on an advisory basis as to the State claim. The jury returned a verdict of "no" to the question: "Was Mr. Johansen's age the determining factor in his discharge?" The judge similarly found, on the State claim, that "the [plaintiff's] age was not the determining factor in his discharge." Judgment entered for the defendant NCR on both counts.

We review the salient facts which the evidence allowed the jury to find. Before Johansen, then fifty years old, was hired as a sales representative (the precise date of hire was April 7, 1980), Gerry Garrett, the branch manager of NCR's Waltham office (it covered the New England region), while sifting through applications, remarked about Johansen's résumé, "This man is way too old for this job." However, after interviewing Johansen and about nine other finalists, Garrett selected Johansen. The other applicants were all under age forty. Garrett thought Johansen might particularly fill the bill of minding and binding existing customers because he had sales experience and would be familiar with how purchasing decisions were made by large companies. "He was a silver-haired, distinguished-looking gentleman," Garrett observed, who "we felt would represent the company the way we wanted it represented in the Stone & Webster [Engineering Corporation] and New England Telephone Company." To develop new customers and territories, Gar-

---

nate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

[2]Subsection 1B of § 4 of G. L. c. 151B, inserted by St. 1984, c. 266, § 6, provides in pertinent part, "It shall be an unlawful practice: . . . [f]or an employer in the private sector, by himself or his agent, because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such an individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification." On the date NCR discharged Johansen, December 5, 1980, the organization of the statute was somewhat different, but the substantive provisions were, for purposes of this case, the same.

rett, at the time he hired Johansen, engaged a less experienced "high energy level" person.

Less than nine months later, on December 5, 1980, NCR fired Johansen. His six-month review contained adverse observations about his knowledge of the NCR product line, the poor quality of his written reports and oral presentations ("he was just no good on his feet"), and the amount of work he was putting into the job. Johansen's position at NCR was particularly undermined by a complaint from a major customer, Stone and Webster Engineering, that Johansen could not get an accurate purchase contract together. The adverse comment had been made at an encounter in San Diego between Hervey Bailey of Stone and Webster and NCR's vice president for sales, Edward Clark. Bailey gave Clark to understand that "he couldn't even get a proper replay of what he was feeding the sales rep." Clark traveled from NCR's home base in Minneapolis to size up the situation in Boston. He had salesmen make presentations and formed an unfavorable impression of Johansen. Clark decided Johansen should be discharged and left "implementation" to the people in the regional office to whom Johansen reported.

Before we turn to the instruction that Johansen wanted and did not get, we recapitulate what was, before the decision in *Price Waterhouse* v. *Hopkins*, 490 U.S. 228 (1989), the standard (although not the only) method of allocating evidentiary burdens in cases involving discrimination based not on job qualifications but on forbidden grounds such as race, gender, religion, national origin, or age. The initial burden is on the plaintiff to produce evidence of unlawful discrimination, i.e., to make a prima facie case.[3] If the plaintiff man-

---

[3]The elements of the prima facie case in a hiring case involve establishing that the job seeker "applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 253 (1981). By analogy, in a discharge case, the plaintiff, to establish a prima facie case, must produce evidence that the plaintiff was discharging the responsibilities of the job capably and was fired under circumstances which give rise to an inference of unlawful discrimination.

ages to make a prima facie case, the burden shifts to the defendant to produce evidence of lawful reasons for firing or not hiring the plaintiff. Should the defendant succeed in so doing, the burden shifts back to the plaintiff to establish by a preponderance of the evidence that the reasons, ostensibly legitimate, put forward by the employer are a pretext for the real reason, unlawful discrimination. This allocation of evidentiary burdens was explicated in two leading cases, *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802-805 (1973), and *Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 252-253 (1981). The approach was expounded locally in *Wheelock College* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 130, 138-139 (1976); *Smith College* v. *Massachusetts Commn. Against Discrimination*, 376 Mass. 221, 229-232 (1978); *Trustees of Forbes Library* v. *Labor Relations Commn.*, 384 Mass. 559, 566-567 (1981); *Comey* v. *Hill*, 387 Mass. 11, 17-18 (1982); and *Loeb* v. *Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir. 1979).[4]

Part of the plaintiff's request for jury instructions followed the criteria first announced in the *McDonnell* case, *supra*. Included in the plaintiff's request for instructions, however, was the following, which provides the focus of the appeal:

> "It is possible on the evidence presented that you will conclude that Mr. Johansen's age was one reason but not the only reason for his termination. It is not necessary for Mr. Johansen to convince you that his age was the only reason for the termination. Age may be one of a number of factors contributing to the [d]efendant's action. If Mr. Johansen proves to you that age was a factor, you must find in his favor unless the [d]efendant proves to you that Mr. Johansen would have been terminated even if it were not for his age. In other words, if Mr. Johansen proves that age was a factor, the

---

[4]The parties do not dispute, nor should they, the applicability of guidelines developed in race and gender discrimination cases to age discrimination cases. There is no reason for the procedural framework to vary with the nature of the unlawful discriminatory conduct. The point is discussed in *Loeb* v. *Textron, Inc.*, 600 F.2d at 1014-1019.

[d]efendant must prove that age was not a determinative factor."

Under that requested instruction, the burden fell on NCR to prove that age was not a determinative factor. In the classic formulation of the *McDonnell* and *Burdine* cases, *supra,* the burden remained with the plaintiff to prove that his job performance or other lawful reasons given by the employer were a pretext. The judge's instruction adhered generally to the *McDonnell-Burdine* formula. The pertinent portion of the instruction appears as an appendix to this opinion.[5] The *McDonnell-Burdine* allocation of evidentiary burdens presupposed that the evidence of unlawful discrimination would be circumstantial. *Trans World Airlines, Inc.* v. *Thurston,* 469 U.S. 111, 121 (1985). It was not likely that employers would declare forbidden bias frontally by, e.g., the publication of policy statements that blacks would be excluded from executive positions or that employees over the age of fifty were to be phased out at the earliest opportunity. Rather, most cases of unlawful discrimination would be stitched together from hiring and discharge patterns, other acts of discrimination, and the absence of plausible explanation for the employment decision. See *Smith College* v. *Massachusetts Commn. Against Discrimination,* 376 Mass. at 228 n.9. Passing over the job application of a member of the protected class is the sort of evidence that has given rise to an inference of unlawful discrimination. See *International Bhd. of Teamsters* v. *United States,* 431 U.S. 324, 357-358 (1977).

---

[5]Although the plaintiff's counsel submitted written requests for instructions and discussed his view of the evidentiary burdens of the parties with the judge, the objection counsel made following the charge, see Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974), was less pointed than it might have been. Plaintiff's counsel said, "I would like to object to the failure to include in your instructions the request concerning the burden of proof on the defendant that age was not a determinative factor." In light of the written request and earlier discussion, we think that reasonably identified for the judge the ground of the objection. *Collins* v. *Baron,* 392 Mass. 565, 568-569 n.3 (1984). See also *Callahan* v. *Boston Edison Co.,* 24 Mass. App. Ct. 950. 951 (1987).

In the aftermath of *McDonnell* and *Burdine*, there developed a line of cases which observed that a different allocation of evidentiary burdens was called for when there was evidence of declared animus or discrimination against the protected group. When unlawful discrimination was established as present in the employment setting the employer was required not only to prove that there was a lawful reason for the employment decision but also to prove by a preponderance of the evidence that it would have made the same employment decision even though it may have taken age, gender, race, or other improper categorization into account. See *Trans World Airlines, Inc.* v. *Thurston*, 469 U.S. at 121; *Blalock* v. *Metals Trades, Inc.*, 775 F.2d 703, 707, 711-712 (6th Cir. 1985); *Fields* v. *Clark Univ.*, 817 F.2d 931, 935-936 (1st Cir. 1987). Those cases and others like them make a dichotomy between "direct" and "indirect" evidence of unlawful discrimination; if the evidence is "indirect," the *McDonnell-Burdine* allocation of burdens applies; if the evidence is "direct," the employer carries the burden of persuading the finder that lawful considerations dictated the employer's action, notwithstanding the presence of animus based on age, race, etc.

We shy from the direct-indirect evidence terminology because it is too elusive a guide. Direct evidence has been described as evidence which "if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Randle* v. *LaSalle Telecommunications, Inc.*, 876 F.2d 563, 569 (7th Cir. 1989). Yet short of something so implausible as an employer acknowledging that it failed to employ Asian-Americans or to promote women as matter of policy, the process of arriving at an ultimate finding of unlawful discrimination will require an element of inference to tie the evidence of unlawful discrimination to the employment decision. For example, an expression of conviction by an executive who has personnel responsibilities that "new young blood" is needed, followed by the discharge of persons over forty and their replacement by persons under thirty, makes for powerful evidence of age dis-

crimination, but some inferential reasoning is required to link it to the discharge of a particular person. When the cases speak of direct evidence they generally refer to evidence which, if believed, results in an inescapable, or at least highly probable, inference that a forbidden bias was present in the workplace.[6] So it was that in *Miles* v. *M.N.C. Corp.*, 750 F.2d 867, 875-876 (11th Cir. 1985), a slur about the ability of blacks by a person who had responsibility for hiring, coupled with the presence of very few blacks on the payroll, was taken as direct evidence of unlawful discrimination. Similarly, in *Fields* v. *Clark Univ.*, 817 F.2d at 933, evidence of sexual harassment and sexual innuendo was treated by the trial judge as strong — for which the Court of Appeals read "direct" — evidence of a pervasively sexist attitude on the part of male members of a university sociology department. In *Trans World Airlines, Inc.* v. *Thurston*, 469 U.S. at 121, one of the early instances in which the direct-indirect evidence dichotomy was applied, the evidence, indeed, required no inferences to be drawn. There was undisputed evidence that the airline had a policy of allowing captains who became disqualified to be eligible for duty as flight engineers and to be entitled to bump less senior flight engineers. Captains over the age of sixty, however, as matter of policy, were not entitled to the flight engineer positions.

In *Price Waterhouse* v. *Hopkins*, 490 U.S. 228 (1989), the Court undertook to resolve conflict among the Federal Courts of Appeal about the allocation of evidentiary burden in cases in which "it has been shown that an employment decision resulted from a mixture of legitimate and illegitimate motives." *Id.* at 232. There was powerful evidence in *Price Waterhouse* that partners had appraised a candidate for partnership, Hopkins, with gender stereotypes in mind. The partner charged with explaining to Hopkins why her status was on hold, advised Hopkins she "should walk more

---

[6]See 1A Wigmore, Evidence § 24 at 944, 948-949 (Tillers Rev. 1983), in which direct evidence is described as that from which the proposed conclusion is required, i.e., there is a necessary inference, whereas circumstantial evidence permits alternative inferences.

femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." *Id.* at 235.

*Price Waterhouse* decided that if a plaintiff in an unlawful discrimination case[7] shows that an impermissible motive played a part in an employment decision, an employer may not prevail by showing, as in *McDonnell-Burdine*, a legitimate reason for its decision; the employer "instead must show that its legitimate reason, standing alone, would have induced it to make the same decision." *Price Waterhouse v. Hopkins*, 490 U.S. at 252. Unlawful discrimination cases decided since *Price Waterhouse* have reverted to a direct evidence vocabulary absent from the plurality opinion of the Court,[8] but what is involved in those cases is an assessment whether there has been strong evidence that an impermissible motive was involved in an employment decision. See and compare *Randle v. LaSalle Communications, Inc.*, 876 F.2d at 570; *Gagne v. Northwestern Natl. Ins. Co.*, 881 F.2d 309, 316 (6th Cir. 1989); *Lynch v. Belden & Co.*, 882 F.2d 262, 269 n.6 (7th Cir. 1989); *Blake v. J.C. Penney Co.*, 894 F.2d 274, 278 (8th Cir. 1990); *Jackson v. Harvard Univ.*, 900 F.2d 464, 467-468 (1st Cir. 1990); *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990); *Ramsey v. City & County of Denver*, 907 F.2d 1004, 1007-1008 (10th Cir. 1990); *Burns v. Gadsden State Community College*, 908 F.2d 1512, 1518 (11th Cir. 1990); *Chamberlin v. 101 Realty, Inc.*, 915 F.2d 777, 779-782 (1st Cir. 1990).

We return, at long last, to the facts in this case. There had been evidence adduced by the plaintiff through a former employee (who had hoped to be selected regional manager and left after Gerry Garrett had been selected) that Garrett, when examining the plaintiff's résumé, expressed the thought

---

[7]The *Price Waterhouse* opinion dealt with a claim under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et seq. (1982), but the principles are applicable to unlawful discrimination cases generally, whatever the specific statutory basis.

[8]The phrase "direct evidence" does appear in the concurring opinion of Justice O'Connor at 278, and the dissenting opinion of Justice Kennedy at 280.

that the resume described someone "way too old for the job." There had also been evidence that Garrett wanted "high energy level" (it could be code for youth) in certain jobs. Appraised in the light of Garrett's having hired Johansen in preference to younger applicants, the evidence is weak beer to support the proposition that Johansen's discharge nine months later was at least partially infected with age bias. Stray remarks suggestive of impermissible bias do not constitute the sort of evidence that places a case in the mixed motive category and requires the employer to prove that its decision was made only on the basis of legitimate criteria. It was, therefore, correct to instruct the jury that, if the employer had advanced a legitimate business purpose in discharging Johansen, the burden fell back to Johansen to prove that the employer's explanation was a pretext. The record did not establish the prerequisite for an instruction that the burden fell on NCR to prove that it would have made the same decision even if age had not been a factor. See *Williamson* v. *Feinstein*, 311 Mass. 322, 324 (1942); *Back* v. *Wickes Corp.*, 375 Mass. 633, 638 (1978). The plaintiff had not approached establishing that age was a factor.

*Judgment affirmed.*

APPENDIX.

*Extract from Trial Judge's Charge.*

In order to prove his case, a discharged plaintiff must establish that he is over 40, which is not disputed in this case.

Second, that he was terminated. Which is also undisputed here.

And third, that his age was the determining factor in his discharge. Which is disputed here.

That is, regardless of the plaintiff's strengths or weaknesses as an employee, he must prove by a fair preponderance of the credible evidence that the real reason for his termination, the determining factor, as I have called it, was his age.

Now, if a plaintiff can establish those elements by direct evidence, he or she may, of course, do so.

An example of direct evidence of discrimination would be an employer's acknowledgement that he had hired Tony, or Chris, sight unseen. But fired her upon learning that Tony, or Chris, is a woman and not a man.

That would be an example of direct evidence of discrimination.

But the plaintiff may also prove discrimination indirectly, or circumstantially.

In that case, a plaintiff must prove, in addition to his age and his termination, that he was qualified for the job; was performing it at a level of the employer's reasonable, legitimate expectations; and was replaced or succeeded by a younger person.

Let me reiterate those.

The plaintiff may proceed indirectly or circumstantially, and where he chooses to do so, in addition to proving the discharge and being over 40, he must also prove by a fair preponderance of the credible evidence that he was qualified for the job; was performing it at a level of the employer's reasonable, legitimate expectations; and was replaced or succeeded by a younger person.

If a plaintiff fails to establish those elements by a preponderance of the evidence, then the defendant prevails, without more.

However, if the plaintiff has proved those elements, it becomes the defendant's obligation to articulate a nondiscriminatory reason for the discharge.

That is, to come forward with a legitimate, age-neutral basis for its action.

Now, the defendant is not obliged to show that it made a correct business decision with which you or another employer would necessarily agree. Rather, the defendant's obligation is limited to presenting a non-discriminatory basis for its decision.

If the defendant does so plausibly, then the plaintiff, in order to prevail, must prove that the employer's stated reasons are a pretext for age discrimination; that is, that the employer's explanation is only an attempt to mask the real reason for the discharge. The plaintiff's age.

If the plaintiff has not proved discrimination directly, or the foregoing elements circumstantially, you should return a verdict for the defendant.

If the plaintiff has proved those elements by a fair preponderance of the credible evidence, to your satisfaction, you should return a verdict for the plaintiff.