DONALD TARDANICO vs. AETNA LIFE & CASUALTY
COMPANY.

No. 94-P-1888.

Plymouth. May 20, 1996. - October 8, 1996.

Present: KASS, JACOBS, & FLANNERY, JJ.

*Employment,* Discrimination, Termination. *Civil Rights,* Termination of
employment. *Jurisdiction,* Administrative matter, Civil rights. *Limita-
tions, Statute of. Massachusetts Commission Against Discrimination.
Practice, Civil,* Summary judgment.

The Massachusetts Commission Against Discrimination has authority to
correct its docket if it is incorrect, and a corrected docket may satisfy
the jurisdictional requirements set forth in G. L. c. 151B, § 9, for filing
an action in Superior Court. [445-446]

In an age discrimination case, the judge correctly ordered summary judg-
ment in favor of the employer where the evidence submitted did not es-
tablish that the employer's reason for discharging the employee, viz.,
falsifying automobile repair appraisals in his job as a claims representa-
tive, was a pretext. [447-450]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 27, 1991.

The case was heard by *Richard S. Kelley,* J., on a motion
for summary judgment.

*Harvey A. Schwartz* for the plaintiff.

*Lisa J. Damon* for the defendant.

KASS, J. Aetna Life & Casualty Company (Aetna) fired
Donald Tardanico, a senior technical automobile claims rep-
resentative, on April 29, 1991, for the stated reason that he
had falsified repair appraisals. At the time, Tardanico was
fifty-seven years old and had been in Aetna's employ for
thirteen years. In a complaint filed with the Superior Court,
he claimed age discrimination in violation of G. L. c. 151B,

§ 4.[1] A judge in that court, acting on a motion for summary judgment, ruled that: (a) Tardanico had complied with the jurisdictional prerequisite of first filing a charge of unlawful discrimination with the Massachusetts Commission Against Discrimination (MCAD); and (b) in his submission of materials on the motion for summary judgment (affidavits and depositions) Tardanico had not succeeded in establishing that there was a genuine dispute over a material fact bearing on the question whether the ground asserted by Aetna for discharging Tardanico had been a pretext. A judgment for the defendant was entered accordingly and we affirm that judgment.

1. *Jurisdictional question.* Before the Superior Court judge, the question was argued whether Tardanico had established a jurisdictional prerequisite for maintaining an unlawful discrimination action, and whether the MCAD had acted within its authority by docketing Tardanico's complaint nunc pro tunc. The judge awarded summary judgment for Aetna on a substantive ground, and the jurisdictional issue was not discussed by either party on appeal. We are obliged to consider the question, nonetheless, because the parties may not waive a jurisdictional flaw. *Litton Bus. Sys., Inc.* v. *Commissioner of Rev.*, 383 Mass. 619, 622 (1981). *Tate, petitioner,* 417 Mass. 226, 230 (1994). *Tsagronis* v. *Board of Appeals of Wareham*, 33 Mass. App. Ct. 55, 59 n.7 (1992), *S.C.*, 415 Mass. 329 (1993).

Resort to judicial process is not available to a party claiming age discrimination (or other discrimination claims within the adjudicatory sphere of the MCAD) unless that party has first lodged a complaint of unlawful discrimination with the MCAD within six months of the occurrence of the discriminatory event (here Tardanico's discharge). G. L. c. 151B, § 5, second par., thirty-sixth sentence.[2] *Jancey* v. *School Comm. of Everett*, 421 Mass. 482, 497-498 (1995). *Melley* v. *Gillette Corp.*, 19 Mass. App. Ct. 511, 512-513 (1985), *S.C.*, 397 Mass.

---

[1]Tardanico's complaint included a second count based on G. L. c. 93, § 103, but he has not appealed from an adverse judgment on that count, which entered on the authority of *Agin* v. *Federal White Cement, Inc.*, 417 Mass. 669, 672 (1994).

[2]Section 5 runs in excess of four printed pages and the second paragraph alone runs over three pages of unbroken text. The statute would benefit from editorial reorganization.

1004 (1986). *Cherella* v. *Phoenix Technologies Ltd.*, 32 Mass. App. Ct. 919 (1992). If the complainant wants judicial determination of his grievance, he may appeal the MCAD's determination, if one has occurred, see G. L. c. 151B, § 6, or, as here, may bring the matter to a court ninety days after filing the claim with the MCAD (or sooner if the MCAD gives permission). See G. L. c. 151B, § 9. In either event, the administrative process ends. See *Brunson* v. *Wall*, 405 Mass. 446, 451-452 (1989); *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 583-585 (1994).

The date of Tardanico's discharge by Aetna, it may be recalled, was April 29, 1991. Tardanico's lawyer claimed to have filed a complaint with the MCAD on August 27, 1991, within the six months limitation period. When, on December 27, 1991, Tardanico filed his age discrimination action in Superior Court (the MCAD not having acted),[3] Aetna, in the course of framing its answer, discovered the MCAD had no record of the Tardanico complaint. Counsel for Tardanico checked with the MCAD and learned to his dismay — but not his surprise — that, indeed, there were no traces at the MCAD of his client's complaint. It was not unusual, he wrote to Aetna's counsel, for the MCAD to fail to process or docket a claim.

To establish the jurisdictional foundation for maintaining the court action, Tardanico's counsel brought before the MCAD a motion to assign a docket number nunc pro tunc and to close the MCAD action nunc pro tunc. To that motion, counsel attached an affidavit attesting that he had mailed a charge of discrimination to the MCAD on August 27, 1991, postage prepaid; adding as exhibits to that affidavit, a photocopy of Tardanico's charge of discrimination and a photocopy of a letter of transmittal to the MCAD from counsel dated August 27, 1991. In Aetna's written opposition to that motion and in the MCAD's order allowing the motion, there is discussion of the aptness of applying the doctrine of equitable tolling of a statute of limitations. See, e.g., *Zipes* v. *Trans World Airlines, Inc.*, 455 U.S. 385, 393-398 (1982); *Christo* v. *Edward G. Boyle Ins. Agency, Inc.*, 402 Mass. 815, 817 (1988); *Cherella* v. *Phoenix Technologies Ltd.*,

---

[3]Tardanico's counsel wrote to the MCAD on December 26, 1991, informing it that he had filed an action in Superior Court and asking that the MCAD action be dismissed.

32 Mass. App. Ct. at 920; *Kale* v. *Combined Ins. Co. of America*, 861 F.2d 746, 751-752 (1st Cir. 1988). Under the doctrine as described in those cases, a statute of limitations may be tolled in cases of this kind by reason of the employer having caused the employee to delay acting, i.e., an equitable estoppel, or because the plaintiff was understandably ignorant of his statutory rights. *Id.* at 752. *DeFazio* v. *Delta Air Lines, Inc.*, 849 F. Supp. 98, 101 (D. Mass. 1994). Misleading action by a governmental agency might also be the occasion of invoking the equitable tolling principles.

Equitable tolling is, however, not pertinent to Tardanico's case. Aetna did nothing to cause him to delay acting nor was he unaware of his statutory rights. Tardanico's point is that he in fact acted timely, and that the MCAD's record should so reflect. The MCAD's regulations do not require filing in hand; they expressly authorized filing by ordinary mail. 804 Code Mass. Regs. § 1.03(2) (1991). Compare Mass.R.Civ.P. 3, as amended, 385 Mass. 1215 (1982), which requires that, if an action is commenced by mail, the mail be certified or registered so as to verify receipt. Compare, also, *Tilcon Mass., Inc.* v. *Commissioner of Rev.*, 30 Mass. App. Ct. 264, 265 (1991)(timely filing of an application for tax abatement requires that it be placed in the hands of the deciding authority before expiration of the deadline for filing).

When the docket of a court fails to reflect an action taken, it is within the power of the court to direct that the docket be corrected so that it states what has actually occurred, such as a filing by a party or an order of the court. *Hathaway* v. *Congregation Ohab Shalom*, 216 Mass. 539, 542-543 (1914). Compare *Jordan Marsh Co.* v. *Barry*, 295 Mass. 210, 212-213 (1936), and *Hackney* v. *Butler*, 339 Mass. 605, 607-608 (1959). There is no reason that an administrative agency does not have the same power to correct a docket that is incorrect. The chairman of the MCAD, who considered Tardanico's motion, credited the sworn statement of counsel about the mailing of the complaint to the MCAD, the genuineness of the photocopies of the documents of transmission and that of the correspondence between counsel and client. On that evidence, the chairman reasonably ordered that the docket reflect the filing of the complaint as of the date when that had apparently been done. The corrected docket, in turn, satisfies the jurisdictional condition for this action.

2. *Correctness of award of summary judgment on age discrimination claim under G. L. c. 151B.* The three-stage order of proof that governs the presentation of claims of unlawful discrimination, absent overt evidence of discrimination (see *Johansen* v. *NCR Comten, Inc.,* 30 Mass. App. Ct. 294, 298-300 [1991]), was restated and refined relatively recently in *Blare* v. *Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437 (1995). In broad outline, the first stage of proof is for the complaining party to make out by a preponderance of the evidence a prima facie case of discrimination — in the instant case, age discrimination. In the second stage, the employer must articulate a nondiscriminatory reason for what it has done — in the instant case having fired the plaintiff because he falsified automobile damage appraisals. In the third stage, the employee may undertake to prove that the employer's justification for the action against him is not genuine, but a pretext for the real and unlawful motive — in the instant case wanting to be rid of the employee because of his age. For cases that develop and explicate the three-stage methodology, see *McDonnell Douglas Corp.* v. *Green,* 411 U.S. 792 (1973); *Wheelock College* v. *Massachusetts Commn. Against Discrimination,* 371 Mass. 130, 138-139 (1976); *Brunner* v. *Stone & Webster Engr. Corp.,* 413 Mass. 698, 700 (1992); *Johansen* v. *NCR Comten, Inc.,* 30 Mass. App. Ct. at 296-297. An extensive compilation of authorities appears in the *Blare* opinion. The refinement made in the *Blare* case is in defining the burden of a plaintiff in stage three. If a plaintiff "has established a prima facie case and further shows . . . that the employer's articulated reasons are a pretext . . ., the plaintiff is entitled to recovery for illegal discrimination under G. L. c. 151B." *Blare* v. *Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. at 444-445. Aetna concedes, for purposes of the appeal, that Tardanico succeeds at stage one, i.e., has established a prima facie case of age discrimination,[4] and Tardanico concedes, for purposes of the appeal, that Aetna succeeds at stage two, i.e., has articulated a nondiscriminatory reason for discharging Tardanico. The battleground is stage

---

[4]The interior elements of stage one would be that Tardanico was: (a) in the protected class, over age forty; (b) doing his job acceptably; (c) fired; and (d) replaced by a younger person. See *White* v. *University of Mass. at Boston,* 410 Mass. 553, 557 (1991); *Duke* v. *Uniroyal Inc.,* 928 F.2d 1413, 1417 (4th Cir. 1991).

three, i.e., whether Aetna's reasons are a sham. Does the employer's articulated reason "lack[] reasonable support in evidence or is [it] wholly disbelievable[?]" *Lewis* v. *Area II Homecare for Senior Citizens, Inc.,* 397 Mass. 761, 765 (1986). Pretext may be shown by circumstantial evidence. *Blare* v. *Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. at 445. The employer's reasons need not be wise, so long as they are not discriminatory and they are not pretext. *Lewis, supra* at 766.

The appeal is up on summary judgment and our task is to consider whether there is evidence which generates a genuine dispute of fact on the pretext point. Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). *Flesner* v. *Technical Communications Corp.,* 410 Mass. 805, 808-809 (1991). *Harrison* v. *Boston Financial Data Servs., Inc.,* 37 Mass. App. Ct. 133, 136 (1994). Our reading of the summary judgment materials is in a light most favorable to the nonmoving party, here the plaintiff. *Blare* v. *Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. at 438. *Harrison, supra* at 136. Because the ultimate question is the employer's state of mind, requiring a finding much dependent on circumstantial evidence, summary judgment is contra-indicated. *Blare, supra* at 439. That is not to say, however, that summary judgment is never appropriate in unlawful discrimination cases. *Id.* at 440. See as examples *McKenzie* v. *Brigham & Women's Hosp.,* 405 Mass. 432, 437-438 (1989) (racial discrimination); *Brunner* v. *Stone & Webster Engr. Corp.,* 413 Mass. at 705 (gender discrimination).

We state pertinent facts which the materials on summary judgment, viewed most favorably to Tardanico, support. When fired, Tardanico was fifty-seven years old; his replacement was thirty-one years old and received a salary that was about $6,000 less per year. Aetna subjected Tardanico to conditions of labor that were undignified so far as office space and office equipment were concerned. For example, he had no air conditioning, shelving was inadequate, the camera issued by Aetna to photograph damaged cars did not work properly, and the company did not provide film development service. A few other field representatives worked under equally spartan conditions, although most had the benefit of better offices and functioning equipment. There was no other evidence that the facilities afforded field representatives varied on the basis of age.

Eight of Tardanico's appraisals were subjected to inspection by Aetna internal security personnel — the probe having been triggered, according to Aetna, by an anonymous tip. Five of the eight files inspected disclosed what Aetna regarded as significant and obvious errors, e.g., recording that a new replacement part had been used in a repair whereas the part, on inspection, appeared not to be new. In relation to all the appraisals that Tardanico had done, the investigation was limited in scope and fell short of demonstrating criminal wrongdoing. There was no evidence of kickbacks, although the informer had mentioned kickbacks from two repair shops. There were explanations for some of the apparent discrepancies, e.g., new parts could sustain damage during installation that did not impair the functional integrity of the replacement part. Tardanico conceded certain errors, suggesting that such errors were not out of the ordinary. There is undoubtedly a dispute of fact about how serious Tardanico's errors were and whether some claimed errors were, indeed, errors. During the year of Tardanico's discharge, in August, 1991, and December, 1991, two other field claims representatives were confronted with similar levels of appraisal errors. One chose to resign and the other was discharged. There was no evidence that age was a factor in those incidents.

Tardanico argues that his submission allows inferences that Aetna was embarked upon a reduction in force in Massachusetts and that his discharge was responsive to an inquiry about early retirement benefits. Those circumstances, he argues, disclose the true basis for the termination of his employment at Aetna. The argument that Aetna intended to reduce its work force (Aetna ultimately did withdraw from the business of writing automobile insurance in Massachusetts) does not square with Aetna's hiring of a replacement for Tardanico. As to the early retirement inquiry, the evidence is that the investigation of Tardanico had begun before he made an inquiry about the terms of early retirement. The evidence establishes no links among the senior security auditor (Peter Ter Bush) who conducted the field investigation and recommended Tardanico's discharge, the claims manager of Aetna's New England branch office (Guy Crosby), who made the discharge decision, and the in-house adviser on retirement questions with whom Tardanico had conferred.

When Ter Bush confronted Tardanico with the flawed appraisals, Ter Bush commented that Tardanico "had been around for a long time" and that perhaps Tardanico's "bag was getting too heavy." It is possible to spot an allusion to age in those remarks. It is equally possible to take the comment as an allusion to a degree of familiarity with the job that had bred contempt for accuracy and detail. In terms of tending to prove that the erroneous or falsified appraisals were a pretext, Ter Bush's comments fall well short of the two comments in *Blare*. First, "Are you getting too . . . old that you can't handle two machines?" Second, the further comment by the plaintiff's supervisor in *Blare* to the effect that few people retired from Husky, the employer. *Blare*, 419 Mass. at 439. Nor did the remarks in *Blare* stand alone. There was evidence in *Blare* that younger employees chargeable with the same productivity failures and quality lapses as Blare had been taxed with were not disciplined and certainly not fired. "[I]solated or ambiguous remarks, tending to suggest animus based on age, are insufficient, standing alone, to prove an employer's discriminatory intent." *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 314 n.7 (1993). *Blare*, at 447 n.9. Ter Bush's comments are, as noted, highly ambiguous, and stand alone in that there is no showing that the protected class — older employees — were treated differently by Aetna. There is no showing of any other age related instances of discipline or discharge, while there was evidence that two other employees were similarly disciplined without regard to age.

When Tardanico's submission on summary judgment is distilled, nothing beyond the comments discussed and his own age suggest that the reasons given by Aetna for discharging him are a pretext. The Superior Court judge correctly concluded that, on the basis of what Tardanico had submitted in opposition to Aetna's motion for summary judgment, it was unlikely that evidence would be forthcoming at trial tending to prove that Aetna's reason for firing Tardanico was a pretext. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 715-716 (1991).[5]

*Judgment affirmed.*

---

[5]Tardanico has argued that the Superior Court judge mistakenly employed the "pretext plus" standard rejected in *Blare, supra* at 444. The judge's memorandum of decision does not bear out that contention.